Argued and submitted March 31, affirmed in part, reversed and remanded in part
December 30, 1987

## STATE OF OREGON,
*Appellant,*

*v.*

## RUFUS SAM McKEE,
## CONSTANCE JOY McKEE,
and
## JAMES GILBERT TAYLOR,
*Respondents.*

(85-0351, 85-0352, 85-0353, 85-0354,
85-0355; CA A39005)

747 P2d 395

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Timothy P. Alexander, Beaverton, argued the cause and filed the brief for respondent James Gilbert Taylor.

Timothy M. Bowman, Hillsboro, filed the brief for respondent Constance Joy McKee.

No appearance by respondent Rufus Sam McKee.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendants were charged with promoting gambling in the first degree, ORS 167.127, and the McKees were also charged with possession of a controlled substance. ORS 475.992. The state appeals from an order suppressing evidence obtained as a result of a search conducted pursuant to several warrants. We affirm the suppression of evidence obtained as a result of the search of defendants' bank accounts but reverse the suppression of evidence obtained from searches of defendants' residences, business premises and automobiles.

On February 15, 1985, nine search warrants were issued by the Washington County Circuit Court and the Multnomah County District Court. Those warrants authorized the search of defendants' residences, businesses, automobiles and bank accounts. They were issued on the basis of two affidavits, one of which was prepared by Washington County Sheriff's Deputy Cattron and the other by Kathryn McLaughlin, an Oregon Department of Justice investigator and certified public accountant.

The Cattron affidavit consists of 37 pages, generally alleging facts that, if true, would indicate that defendants were operating an illegal bingo establishment. Although the affidavit is lengthy, its general tenor can be discerned from these statements:

"I have personal knowledge of a building located at 10015 Southwest Hall Boulevard, Tigard, Washington County, Oregon. That I have been inside these premises on more than five (5) occasions during the time period between June, 1984 and February, 1985. That on every occasion I have been to these premises during this time period, I have observed numerous persons engaging in the playing of bingo. That I have also participated in the playing of bingo while inside the premises by renting or purchasing bingo cards or 'throw away' paper bingo sheets. That I rented these items from a cashier or 'floor worker' and the monies I paid were retained by the establishment. The purpose of renting or purchasing bingo hard cards or paper 'throw away' bingo sheets was to engage in the playing of bingo with the possibility of winning money;

"* * * I have also observed one (1) large electrically lit sign advertising Metzger Bingo and the playing of bingo games at said premises. While inside the premises at 10015 Southwest Hall Boulevard, myself and other vice officers have obtained

printed schedules for the bingo sessions, which are headed with the name Metzger Bingo.

"That I believe these bingo games are illegal because persons other than the organization, charitable organizations and the players are profiting from these bingo games. I believe this is true because several persons have provided information as set forth in this affidavit. This information was provided both by named informants in a knowing manner and by other persons who volunteered information to police officers."

The affidavit alleges that defendants operated Metzger Bingo under the auspices of the Church of the Gospel Ministry, a church that ordains ministers through the mail. Defendant Rufus Sam McKee (McKee) became such a "reverend" by mailing in a fee. The affidavit contains information provided by several persons indicating that defendants were paying employes to operate the bingo games and were making a profit from the operation. ORS 167.117(4)(d) requires that all profits from the operation of bingo games be donated to charity and that only volunteers operate the games. Much of the information in Cattron's affidavit was provided by persons who were trying to establish a competing bingo enterprise in Washington County. Although that fact was known to Cattron, he did not include it in his affidavit.

The McLaughlin affidavit contains a summary of the McKees' personal and business bank transactions, with attached exhibits which contain detailed records of the accounts. The police investigators obtained the bank records pursuant to ORS 192.565:

"(1) A financial institution may disclose financial records of a customer to a state or local agency, and a state or local agency may request and receive such records, pursuant to a lawful summons or subpena, served upon the financial institution, as provided in this section.

"(2) The state or local agency issuing such summons or subpena shall make personal service of a copy of it upon the customer.

"(3) The summons or subpena shall name the agency issuing it, and shall specify the statutory authority under which the financial records are being obtained.

"(4) The summons or subpena shall state that service of a copy thereof has been made upon the customer, and shall state the date upon which service was accomplished.

"(5) Except as provided in subsection (6) of this section, a financial institution shall not disclose the financial records of a customer to a state or local agency, in response to a summons or subpena served upon it, for a period of 10 days following service of a copy thereof upon the customer, unless the customer has consented to earlier disclosure. If the customer moves to quash such summons or subpena, and the financial institution receives written notice of such action from the customer, all within 10 days following the date upon which a copy of the summons or subpena was served upon the customer, the financial institution shall not disclose the financial records of said customer pursuant to said summons or subpena unless:

"(a) The customer thereafter consents in writing to the disclosure; or

"(b) A court orders disclosure of the financial records to the state or local agency, pursuant to the summons or subpena.

"(6) Pursuant to the issuance of a summons or subpena, a state or local agency may petition the court, and the court, upon a showing of reasonable cause to believe that a law subject to the jurisdiction of the petitioning agency has been or is about to be violated, may order that service upon the customer pursuant to subsection (2) of this section, information concerning such service required by subsection (4) of this section, and the 10-day period provided for in subsection (5) of this section be waived or shortened.

"(7) Where the court grants such petition, a copy of the court order granting the same shall be attached to the summons or subpena, and shall therewith be served upon the financial institution."

■ McLaughlin filed an affidavit and petition to examine defendants' bank records under ORS 192.565(6) without satisfying the notice requirements contained in the remainder of the statute. Her affidavit does not contain any factual allegations to support a finding that reasonable cause existed to believe that a crime had been committed. Instead, the affidavit simply states:

"I have reasonable cause to believe that laws subject to the jurisdiction of the office of District Attorney for Washington County have been violated, namely, the statutes prohibiting promoting gambling in the second degree."

We agree with the trial court that this conclusory statement is not a "showing" of reasonable cause.

A showing of reasonable cause requires a recital of facts that are known to the petitioner and would allow a judge independently to determine whether there is reasonable cause to believe that a crime has been, or is about to be, committed. In this respect, the statute is similar to statutes which set standards for the factual basis required for the issuance of a search warrant. *See* ORS 133.545(4); ORS 133.555(2); *State v. Anspach,* 298 Or 375, 380-81, 692 P2d 602 (1984). The petition to obtain defendants' bank records did not contain sufficient facts to support a showing of reasonable cause; therefore, those records were obtained unlawfully.

The financial record statutes contain an exclusionary provision: "Evidence obtained in violation of ORS 192.550 to ORS 192.595 is inadmissible in any proceeding." ORS 192.590(5). The state argues that the use of defendants' bank records in an affidavit to support an application to a magistrate for a search warrant does not constitute a "proceeding" within the meaning of the statute. To so hold would require us to ignore the process by which search warrants are issued; they are issued only by a judge, ORS 133.545, who may, before acting on an application, examine on oath the affiants and any witnesses the applicant or judge considers necessary, a record of which must be kept. ORS 133.555. Clearly, that process is a "proceeding" within the meaning of ORS 192.590(5). Accordingly, we hold that the use of evidence obtained in violation of ORS 192.550 to ORS 192.595 in an affidavit for a search warrant is prohibited by ORS 192.590(5). Therefore, the McLaughlin affidavit, which is based entirely on the illegally obtained bank records, must be disregarded in determining whether there was probable cause to issue the search warrants.

The Cattron affidavit presents a different problem. It was the subject of a motion to controvert in the trial court. ORS 133.693. At the hearing, defendants argued that many of the allegations in the affidavit should be disregarded, because they were made by persons who were operating a competing bingo enterprise. On a motion to controvert, a defendant has the burden of proving the affiant's lack of truthfulness, accuracy or good faith. ORS 133.693(3); *State v. Dunning,* 81

Or App 296, 298, 724 P2d 924 (1986). The trial court found that defendants met that burden:

> "Deputy Cattron knew at the time he signed the affidavit on February 15, 1985, that Mr. and Mrs. Vinson and Mr. and Mrs. Nelson were involved in a competing bingo operation with the defendants herein and that Deputy Cattron failed to relay that information to the magistrate even though that information would have been important and essential for a magistrate to know in forming an independent judgment as to the reliability of the information as well as to the trustworthiness of the informants."

■    The record supports the trial court's finding that Cattron knew of the informants' biases, but did not include that information in his affidavit. We are bound by that finding. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). However, the information in the affidavit has not been shown to be false; rather, facts known to the affiant relating to the reliability and credibility of some informants were omitted, and the question is whether a reasonable, cautious magistrate would have issued the warrants if he had had that information. We review the affidavit anew in the light of the controverting facts adduced at the hearing. *State v. Harp,* 68 Or App 666, 671, 685 P2d 432, (1984), *aff'd* 299 Or 1, 697 P2d 548 (1985); *State v. Hermach,* 53 Or App 412, 418-19, 632 P2d 466, *rev den* 291 Or 893 (1981).

■    The trial court, instead of re-evaluating the affidavit in the light of the new information, simply excised all of the information in Cattron's affidavit that was provided by the Nelsons and the Vinsons and held that the allegations remaining after deleting that information and that contained in the McLaughlin affidavit did not support a showing of probable cause. The new information relates to the competitors' reliability and credibility as informants, but it does not necessarily mean that they were not telling the truth. We conclude, after reassessment of the affidavit, that their information is sufficiently reliable to support the issuance of the warrants. That they were competitors of defendants suggests a motive to tell the police about defendants' activities; that they are named informants, however, subjects them to civil and criminal liability if they had *falsely* accused defendants. *See State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983). Both of the Nelsons

were formerly employed by McKee, and some of their statements may be against their penal interest, having to do with accepting money under the table from defendants and signing false statements that they were unpaid volunteers. Such admissions tend to bolster their credibility. *State v. Hermach, supra.*

The information given individually by each of the Nelsons and the Vinsons corroborated that given by the others, and that information was also corroborated by statements made to Cattron by another named informant who was a former employe of defendant. In addition, there is substantial independent police corroboration throughout the affidavit sufficient to demonstrate that the informants were giving generally reliable information. In all, the affidavit supports the reliability of the informants, even though they were defendants' competitors. The details in their information, which was specific as to the operation of Metzger Bingo and defendants' handling of money, indicate a familiarity with defendants and their business and tend to support its reliability. *State v. Delker,* 26 Or App 497, 552 P2d 1313, *rev den* (1976). Both the Nelsons and Vinsons, if reliable, were in a position to know the details that they related to Cattron. *See* ORS 133.545(4).

We conclude that the affidavit establishes probable cause to issue the search warrants for the search of defendants' residences, business premises and automobiles. In the absence of the McLaughlin affidavit, the Cattron affidavit does not support probable cause for the search of defendants' bank accounts. That information was properly suppressed. Accordingly, we reverse the order suppressing evidence gained from the search of defendants' businesses, residences and automobiles, and affirm the order suppressing evidence obtained as a result of the search of defendants' bank records.

Affirmed as to suppression of evidence obtained in search of bank account; otherwise reversed and remanded.