Argued and submitted September 28, 2010, affirmed April 4, petition for review dismissed; Court of Appeals decision vacated and case remanded to circuit court October 4, 2012
See 352 Or 563, 287 P3d 1078 (2012)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TOM RALPH BOBBITT,
*Defendant-Respondent.*

Union County Circuit Court
F15567; A142610

275 P3d 187

Tiffany Keast, Assistant Attorney General, argued the cause for appellant. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Wes Williams argued the cause for respondent. With him on the brief was Jennifer Schemm.

Before Sercombe, Presiding Judge, and Brewer, Judge, and Lipscomb, Senior Judge.*

_____

* Brewer, J., *vice* Ortega, P. J.; Lipscomb, S. J., *vice* Landau, J. pro tempore.

BREWER, J.

Lipscomb, S. J., dissenting.

**BREWER, J.**

The state appeals pretrial orders suppressing evidence and granting defendant's motion for return of seized property. Defendant was charged with conspiracy to commit delivery of marijuana for consideration, ORS 475.862, manufacture of marijuana within 1,000 feet of a school, ORS 475.860(1), delivery of marijuana within 1,000 feet of a school, ORS 475.860(1), and possession of marijuana, ORS 475.864. Before trial, defendant filed a motion to suppress and to controvert, as well as a motion to require the state to produce seized items for inspection by the defense, and a motion for return of seized items, described in more detail in the discussion below. The trial court granted the motions in pertinent part, and the present appeal ensued. ORS 138.060(1)(c). We conclude that the trial court properly suppressed the evidence in question and ordered the return of monies seized from defendant's safe deposit box. Accordingly, we affirm.

The state makes two arguments. First, the state argues that defendant's statutory rights under the banking privacy laws, *former* ORS 192.550 to 192.595,[1] were not violated when a bank employee turned over defendant's financial records to a police officer, which, in turn, led to the seizure of defendant's safe deposit box containing a significant amount of cash. Second, the state argues that defendant did not establish a due process violation based on the destruction of exculpatory evidence when the state converted the cash that had been found in defendant's safe deposit box into a check and deposited it in an interest-bearing account. As explained below, we conclude that the trial court correctly determined that the violation of defendant's rights under the banking privacy laws entitled defendant to suppression of all evidence pertaining to the safe deposit box. Accordingly, we need not address the state's arguments concerning the alleged destruction of exculpatory evidence.

In reviewing a trial court's decision on a motion to suppress, we view the record, and all the inferences that it

---

[1] The entire group of banking privacy laws was renumbered in 2011, and is now found at ORS 192.583 through 192.607. References throughout this opinion are to the numbering of those statutes as of 2007.

will support, in the light most favorable to the trial court's findings, if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). In the absence of express findings, we presume that the trial court decided factual issues in a manner consistent with its ultimate conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). There are no significant factual disputes at issue here, at least with regard to the dispositive questions relating to the banking privacy laws.

On May 22, 2008, Officer Conner of the Drug Enforcement Section of the Oregon State Police executed a search warrant—not the warrant at issue in the present appeal—at defendant's residence. In the course of doing so, Conner found more than eight pounds of marijuana, more than $11,000 in cash, and records indicating that defendant had approximately $80,000 in a checking account at the Community Bank. On May 23, 2008, Conner sent to the Joseph Branch of the Community Bank a "Notice of Intent to Seize Bank Accounts" listed under defendant's name.[2]

Later that day, Conner received a call from a bank employee telling him that defendant was there seeking access to his safe deposit box, and asking Conner if "the notice of intent to seize also was for the safe deposit box." Conner replied to the bank employee, "Yes, everything that is in [defendant's] name we need to seize at this point through the State Police."

On May 29, 2008, in anticipation of applying for the search warrant at issue here, Conner went to the Community

---

[2] This "Notice of Intent to Seize Bank Accounts" is mentioned in Conner's search warrant affidavit, and in his testimony at the suppression hearing. No copy of this notice was made part of the record in this case. Conner described the notice as follows:

"I sent them the notice of intent to seize, which is a State Police form that we had made up. [A]nd it had * * * [defendant's] information, as far as his name and date of birth and it asked specifically to freeze all accounts under that name and date of birth."

On cross-examination, Conner agreed that the notice, which he had faxed to the bank, included "specific account numbers" for "one checking account, a savings account, and another checking account," but did not "list anywhere on there a safe deposit box account." Conner further acknowledged that the "Notice of Intent to Seize Bank Accounts" cited ORS 131.561, a statute describing a procedure for seizing property subject to criminal forfeiture.

Bank and spoke with an operations supervisor, Johnson, "got the actual address for where the safe deposit box was held," and "asked her for the number on the safe deposit box so I could specify the safe deposit box that we wanted to search." Johnson provided that information, which Connor then incorporated into an affidavit in support of a search warrant, along with details of his training and experience, to support a conclusion that individuals who traffic in drugs often secrete proceeds of their drug crimes in safe deposit boxes.

On May 30, 2008, Conner obtained a search warrant authorizing him to seize the specified safe deposit box. Pursuant to that warrant, Conner seized the safe deposit box, determined that it had a large amount of cash in it, and transported it to his office. At some point thereafter, another officer's drug-detection dog alerted to the safe deposit box. On July 29, 2008, defendant filed a motion requiring the state to produce for inspection various items seized, including the safe deposit box with the cash in it. The following day, the state converted the cash into a cashier's check and deposited it into a bank account. Defendant thus was not afforded an opportunity to inspect the cash in the safe deposit box.

As pertinent to this appeal, defendant's motion to suppress and controvert was based on the theories that (1) the bank turned over his financial records—in particular, details about the existence of and details about his safe deposit box—in violation of Oregon's banking privacy laws, *former* ORS 192.550 to 192.595; and (2) the state's disposal of the cash contained in the safe deposit box violated his due process rights. The trial court agreed with defendant on both points, and accordingly, granted defendant's motion to suppress all evidence pertaining to the safe deposit box and ordered the return of money seized from the safe deposit box.

As an initial matter, we note what is *not* at issue in this case. The pertinent events described above occurred as a result of Conner's issuance of a "Notice of Intent to Seize" that he issued to defendant's bank, citing ORS 131.561, a provision of the criminal forfeiture law. The state does not assert that ORS 131.561, or any other provision of the criminal forfeiture laws, *see* ORS 131.550 through 131.604, authorized the disclosure of defendant's financial records or seizure of

defendant's safe deposit box, or that the criminal forfeiture laws in any way override the banking privacy laws. The question presented, then, is simply whether defendant is entitled to suppression of the evidence pursuant to *former* ORS 192.590(5), which provided that "[e]vidence obtained in violation of [*former*] ORS 192.550 to 192.595 is inadmissible in any proceeding." *See State v. McKee*, 89 Or App 94, 99, 747 P2d 395 (1987) ("[U]se of evidence obtained in violation of ORS 192.550 to ORS 192.595 in an affidavit for a search warrant is prohibited by ORS 192.590(5).").

*Former* ORS 192.555 (2007) provided:

"(1) Except as provided in ORS 192.557, 192.559, 192.560, 192.565, 192.570 and 192.585 or as required by ORS 25.643 and 25.646 and the Uniform Disposition of Unclaimed Property Act, ORS 98.302 to 98.436 and 98.992:

"(a) No financial institution shall provide any financial records of any customer to a state or local agency.

"(b) No state or local agency shall request or receive from a financial institution any financial records of customers.

"(2) Subsection (1) of this section shall not preclude a financial institution, in its discretion, from initiating contact with, and thereafter communicating with and disclosing customer financial records to:

"(a) Appropriate state or local agencies concerning any suspected violation of the law."[3]

We conclude that none of the statutory exceptions listed in subsection (1) of that statute applies in the present circumstances. The state asserted before the trial court, and continues to assert on appeal, that the bank's disclosure of the existence and details of defendant's safe deposit box was authorized by *former* ORS 192.555(2)(a). It argues that the bank's receipt of the "Notice of Intent to Seize" that Conner faxed on May 23 gave the bank reason to suspect a violation of the law, *former* ORS 192.555(2)(a), and, therefore, the bank was not precluded by that statute from contacting Conner (a representative of an "[a]ppropriate state or local

---

[3] The wording of this statute was amended slightly in 2009. Or Laws 2009, ch 541, § 8. It was renumbered in 2011 and is now codified at ORS 192.586.

agenc[y]") concerning the "suspected violation of the law." We emphasize that the state does not assert—nor does the record support the inference—that any employee or agent of the bank had any reason independent from the "Notice of Intent to Seize" that the bank had received from Conner to suspect defendant of any violation of the law. As explained below, we conclude that the state's proposed interpretation of the exception set out in *former* ORS 192.555(2)(a) is incorrect.

In interpreting a statute, our task is to determine the legislature's intent by examining the text of the statute in context, as well as, if necessary, legislative history and applicable canons of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The terms "financial institution," "financial records," "state agency" and "local agency" are defined by *former* ORS 192.550. It is undisputed that the bank is a "financial institution" and that, when it disclosed the existence of and details about defendant's safe deposit box, it disclosed "financial records." It also is undisputed that Connor, the recipient of that information, was an officer of a "state agency."

Beyond those defined terms, we give words of common usage their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The dispositive question is whether the bank was permitted by *former* ORS 192.555(2) to disclose defendant's financial records to Conner because the circumstances fell within the exception "concerning any suspected violation of the law." "Concerning" means "relating to : REGARDING, RESPECTING, ABOUT." *Webster's Third New Int'l Dictionary* 470 (unabridged ed 2002). Thus, the disclosure of the financial records must be "regarding" or "about" the suspected violation of the law. "Any" is "used as a function word esp[ecially] in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select" or "used as a function word to indicate a positive but undetermined number or amount." *Id.* at 97. "Suspected" is the past participle of "suspect," and means "that one suspects or has a suspicion of." *Id.* at 2303. "Suspect," in turn, has several potential definitions that could apply here:

"**2:** to imagine (one) to be guilty or culpable on slight evidence or without proof ~ one of a theft› ~ one of giving false information› ‹ no one had hitherto ~ed him of statecraft— John Buchan› **3:** to imagine to be or be true, likely, or probable : have a suspicion, intimation, or inkling of : SURMISE ‹we never ~ the disease because the attack amounts to nothing more than a bad headache—*Monsanto Mag.*› ‹when I know that he is honest and ~ that he is right—H. L. Mencken›."

*Id.*

It follows from the ordinary meanings of those terms that, in order to fall within the exception of *former* ORS 192.555(2)(a), the bank's disclosure of customer's financial records must be in regard to the suspected violation of the law. Thus, for example, a bank officer who observed a customer commit a traffic infraction in the bank's parking lot would not be justified under this subsection in turning over that customer's financial records to law enforcement, because the financial records would not be "concerning" the observed violation of the law.

The more challenging textual question is what to make of the term "suspected." As noted, one may "suspect" something "on slight evidence or without proof," or on the basis that it is "true, likely, or probable." That is, the word "suspect" does not necessarily indicate the *quantum* of suspicion that is necessary, and, unlike, for example, the term "reasonable suspicion," there is no well-established legal meaning that informs that question. In this case, however, we need not determine the quantum of suspicion contemplated by the statute, because the dispositive issue here is not how much suspicion was involved, but who must have that suspicion. The phrasing of the statute does not indicate who must have the suspicion—it merely indicates that a bank may disclose financial records of a customer "concerning any suspected violation of the law." Defendant argues that the bank itself must independently suspect a violation of the law in order for this exception to make sense in light of the other provisions of the banking privacy laws. The state, by contrast, takes the position that a bank, having knowledge that a state agency "suspect[s] * * * violation of the law" and is interested in the financial records of a bank's customer, may

provide the financial records to the state agency based on the state agency's suspicion.

We reiterate that the record does not indicate that anyone at the bank actually had any independent suspicion of any violation of the law; the only pertinent evidence in the record came from Conner, and the state introduced no testimony or other evidence from any bank employee concerning the bank's contacts with Conner or with defendant. Thus, the *only* inference that this record can support is that Conner relayed *his* suspicion that defendant was suspected of a violation of the law (by way of giving the bank the "Notice of Intent to Seize" that referenced a criminal forfeiture statute), and the bank's actions were based on *Conner's* suspicion, not on the independent suspicion of anyone employed at the bank.[4]

We conclude that the more natural reading of the text of the statute is that the bank (through one or more of its agents) must have an independent suspicion and that the suspicion of law enforcement agents cannot substitute for such an independent suspicion.[5] There are two textual clues in ORS 192.555 that point in that direction. First, subsection (2) only parallels the prohibitions listed in subsection (1) with respect to a bank. That is, subsection (2) provides an exception to subsection *(1)(a)*'s prohibition on a *financial institution* providing financial records to a law enforcement agency. There is no comparable exception to (1)(b), which precludes a state or local agency from requesting or receiving such records except as specifically provided by the statutes listed in subsection (1). That is, a law enforcement agency may not

---

[4] In other words, the bank's initial communication with Conner actually "concerned" only the scope of the "Notice of Intent to Seize."

[5] The dissent suggests that we have inserted into the statute the word "independently" by reaching this conclusion. 249 Or App at 193 (Lipscomb, S. J., dissenting). The statute permits a bank to contact law enforcement concerning any "*suspected* violation of the law." *Former* ORS 192.555(2)(a) (emphasis added). As noted above, however, the definitions of "suspected" and "suspect" inherently suggest that the person doing the suspecting is the one who has the suspicion—that is, it is a term that describes a subjective state of mind. The fact that a person has knowledge that law enforcement officials suspect someone of something simply cannot mean that the person who has that knowledge *also* suspects the same thing—particularly where, as here, the bank had no inkling of *what* the law enforcement officials suspected defendant of when it turned over the information.

avoid the strictures of subsection (1) based on "any suspected violation of the law," *former* ORS 192.555(2)(a). Second, the exception found in subsection (2)(a) does not preclude a bank "from *initiating contact* with, and thereafter communicating with and disclosing customer financial records" "concerning any suspected violation of the law." (Emphasis added.) That provision appears to contemplate circumstances in which a bank seeks out law enforcement authorities concerning a suspected violation of the law, not circumstances where law enforcement seeks out the bank and informs it that the law enforcement agency suspects a violation of the law. In light of those textual clues, we conclude that the most plausible reading of the text of *former* ORS 192.555(2)(a) is that it concerns circumstances in which a financial institution develops an independent suspicion of a violation of the law, not circumstances in which a law enforcement agency conveys to a financial institution its own suspicions concerning a violation of the law.

Our examination of the pertinent statutory context reinforces that conclusion. *Former* ORS 192.559 allowed state courts to seek financial records of individuals who had requested or received court-appointed counsel. *Former* ORS 192.560 permitted a financial institution to disclose financial records of a customer "when the customer has authorized such disclosure as provided in this section." *Former* ORS 192.570 permitted a financial institution to disclose financial records pursuant to a lawful search warrant. *Former* ORS 192.565, which has potential application to the facts of this case but was not utilized here, provided:

"(1)   A financial institution may disclose financial records of a customer to a state or local agency, and a state or local agency may request and receive such records, pursuant to a lawful summons or subpoena, served upon the financial institution, as provided in this section or ORS chapter 25.[6]

"(2)   The state or local agency issuing such summons or subpoena shall make personal service of a copy of it upon the customer.

---

[6] ORS chapter 25 pertains to support enforcement, and is not at issue in this case.

"(3)   The summons or subpoena shall name the agency issuing it, and shall specify the statutory authority under which the financial records are being obtained.

"(4)   The summons or subpoena shall state that service of a copy thereof has been made upon the customer, and shall state the date upon which service was accomplished.

"(5)   Except as provided in subsection (6) of this section, a financial institution shall not disclose the financial records of a customer to a state or local agency, in response to a summons or subpoena served upon it, for a period of 10 days following service of a copy thereof upon the customer, unless the customer has consented to earlier disclosure. If the customer moves to quash such summons or subpoena, and the financial institution receives written notice of such action from the customer, all within 10 days following the date upon which a copy of the summons or subpoena was served upon the customer, the financial institution shall not disclose the financial records of said customer pursuant to said summons or subpoena unless:

"(a)   The customer thereafter consents in writing to the disclosure; or

"(b)   A court orders disclosure of the financial records to the state or local agency, pursuant to the summons or subpoena.

"(6)   Pursuant to the issuance of a summons or subpoena, a state or local agency may petition the court, and the court, upon a showing of reasonable cause to believe that a law subject to the jurisdiction of the petitioning agency has been or is about to be violated, may order that service upon the customer pursuant to subsection (2) of this section, information concerning such service required by subsection (4) of this section, and the 10-day period provided for in subsection (5) of this section be waived or shortened.

"(7)   Where the court grants such petition, a copy of the court order granting the same shall be attached to the summons or subpoena, and shall therewith be served upon the financial institution."

*Former* ORS 192.565 is listed as an exception to *former* ORS 192.555, and thus, under its provisions, a law enforcement agency such as the Oregon State Police could

seek financial records of a bank customer. The law enforcement agency, however, also had to serve a copy of its summons or subpoena on the bank customer, *former* ORS 192.565(2), and the bank could not turn over the records for at least 10 days, unless the customer consented or a court ordered it to do so. *Former* ORS 192.565(5). That requirement served the purpose of allowing the customer to move to quash the subpoena. *Former* ORS 192.565(5), (6).

Those provisions clearly were designed to apply to circumstances such as these, where a law enforcement agency has reason to believe that financial records held by a bank would be pertinent to a criminal investigation.[7] However, they required notice to the customer, and they afforded the customer an opportunity to move to quash the subpoena. In sum, Conner *could have*, but did not, follow the procedure outlined in *former* ORS 192.565 to obtain information from the Community Bank about defendant's financial records. Rather than doing so, Conner sent the bank a "Notice of Intent to Seize "that asked specifically to freeze all accounts under" defendant's name.[8] There is no indication in the record that the notice provided any detail whatsoever about why the Oregon State Police were intending to seize defendant's bank accounts, no reference to any criminal law that had been violated, and, most importantly, no information that would have provided the bank with a factual basis for developing any independent suspicion of its own that it held financial records concerning any "violation of the law." In essence, the notice merely provided the bank with a reason to know that the Oregon State Police, for some reason relating to a criminal forfeiture law, was interested in seizing defendant's assets.

Had the legislature intended banks to turn over financial information about customers to law enforcement

---

[7] Additionally, *former* ORS 192.585 contains provisions relating to disclosure of certain types of account information to law enforcement agencies in certain situations, but does not apply to the circumstances of this case.

[8] Defendant does not appear to be asserting that that communication from Conner to the bank violated *former* ORS 192.555(1)(b) ("No state or local agency shall request * * * from a financial institution financial records of customers."). Nor does defendant assert that this manner of freezing accounts is not authorized by the forfeiture laws. Accordingly, we express no opinion on either of those matters.

agencies based merely on knowledge that the law enforcement agency was interested in that customer's assets held in the bank, it would not have had reason to enact *former* ORS 192.555, which, as noted, contains a provision specifically prohibiting state law enforcement agencies from requesting "from a financial institution any financial records of customers," *former* ORS 192.555(1)(b), "[e]xcept as provided in" a number of specific statutes set forth in *former* ORS 192.555(1). Moreover, had the legislature intended the exception in *former* ORS 192.555(2)(a) to be as broad as the state posits, it would have had little reason to prescribe the procedures in *former* ORS 192.565 concerning obtaining information by subpoena, or the procedures in *former* ORS 192.570 concerning obtaining information by warrant. In short, if the exception found in *former* ORS 192.555(2)(a) allowing banks to disclose customer financial information concerning "suspected violation[s] of the law" allowed banks to turn over customer financial information because the bank had inferred from information received from a law enforcement agency that a customer was suspected of some unspecified crime— then the purpose of the banking privacy laws would be subverted.

We conclude that *former* ORS 192.555(2), viewed in context, is not susceptible to the broad reading that the state posits. That provision allowed a bank to communicate a customer's financial information to a law enforcement agency when the bank (or its employees) had factual knowledge of some matter related to the customer's financial records that had caused the bank (or its employees) to suspect that the law had been violated.

Accordingly, the trial court correctly determined that defendant was entitled under ORS 192.590(5) to suppression of the evidence obtained in violation of *former* ORS 192.555, and did not err in granting defendant's motions.

Affirmed.

**LIPSCOMB, S. J.,** dissenting.

I have no quarrel with any of the facts recited, nor with the inferences drawn from those facts, in the majority opinion. My disagreement is limited to the legal conclusions

reached by the majority in applying the statutory exemption contained in *former* ORS 192.555(2)(a) (2007) to these facts and inferences.

As the majority opinion states:

> "[T]he *only* inference that this record can support is that Conner relayed *his* suspicion that defendant was suspected of a violation of the law (by way of giving the bank the 'Notice of Intent to Seize' that referenced a criminal forfeiture statute), and the bank's actions were based on *Conner's* suspicion, not on the independent suspicion of anyone employed at the bank."

249 Or App at 188 (emphasis in original). That inference is unobjectionable. The conclusion then drawn by the majority opinion when applying the legislative exemption from the confidentiality provisions of the financial records laws to that inference, however, is simply inconsistent with the actual language of the statute itself.

> "We conclude that the more natural reading of the text of the statute is that the bank (through one or more of its agents) must have an independent suspicion and that the suspicion of law enforcement agents cannot substitute for such an independent suspicion."

*Id.*

In so concluding, the majority opinion effectively inserts the word "independently" into the actual language of the statute so as to make the statutory exemption apply only to independent suspicions. The actual language of the statute, however, does not limit the exception to "independently" suspected violations of the law. The legislative language is specifically unqualified: "any suspected violation of the law" is declared to be sufficient to trigger the legislative exception to the confidentiality statutes. The legislature's presumably deliberate use of the word "any" when applied to "suspected violation of the law" is a clear legislative determination that the applicable class of suspected violations is not limited or restricted to certain specific types of suspected violations; "any" suspected violation of the law is sufficient to meet the statutory criteria. That is what the word "any" means in plain, natural, and ordinary English; without restriction or limitation.

Yet, despite this deliberate legislative use of the modifier "any," the majority concludes that only an "independent suspicion" meets the statutory criteria of "any suspected violation of law." And, more specifically, the majority opinion concludes that, when a bank employee's own suspicion is derived from a Notice of Intent to Seize submitted by a police officer that references a criminal forfeiture statute, it does not qualify for the statutory exemption allowing disclosures "concerning any suspected violation of law" because it is not sufficiently "independent."[1]

With respect, I submit that not only is this conclusion unsupported by any plain, natural, or ordinary usage of the English language, but it is also inconsistent with any modern Oregon legal precedent.

It is our judicial duty to defer to the legislature's unambiguous use of the language it actually employs in crafting the statutes that set forth the regulatory policy of this state. Ever since *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), our Supreme Court has made it clear that the proper role of any Oregon court is to interpret any statute as the legislature has written it, neither inserting anything that has been omitted, nor omitting anything that has been inserted. *Id.* at 610-12. In my opinion, inserting any additional modifier, such as "independent" or "independently," into the legislature's own unambiguous choice of phrase, "any suspected violation of the law," is legally insupportable in this case.

I would reverse the trial court's decision and remand this case for further proceedings consistent with Oregon law.

---

[1] One potential unintended consequence of the majority's decision in this case may be that the bank and its employee might now become civilly liable to its customer, defendant in this case, for violating the confidentiality of his banking records, and thereby depriving him of the use of the substantial amount of cash seized from his safe deposit box by the police. *See generally former* ORS 192.590 (civil liability for willful or negligent violation of banking privacy laws).